**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
131 M Street, NE, Suite 4NW02F
Washington, D.C. 20507

**Plaintiff,**

**v.**

**HOWARD UNIVERSITY**
20401 Georgia Avenue, N.W.
Washington, D.C. 20010

**Defendant.**

**CIVIL ACTION NO.** ____________________

**COMPLAINT**

**JURY TRIAL DEMAND**

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on disability, and to provide appropriate relief to Clarence Muse ("Muse"), who was adversely affected by such practices. Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), alleges that Defendant, Howard University ("Defendant"), failed to hire Muse because of his disability, Type 2 diabetes and end stage renal failure.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to section 107(a) of the ADA,

42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Sections 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant has continuously been an educational institution with its principal place of business in the District of Columbia, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Muse filed a charge with the Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. As more specifically described below, in or around August 2009, Defendant engaged in unlawful employment practices when Defendant failed to hire Muse because of his disability, Type 2 diabetes and kidney failure, in violation of sections 102(a), (b)(1) and (b)(6) of Title I of the ADA, 42 U.S.C. § 12112(a), (b)(1) and (b)(3).

9. Muse has had Type 2 diabetes since 1986. Type 2 diabetes is a condition in which the body does not use insulin normally. As a result of the Type 2 diabetes, Muse's body cannot control the amount of glucose (sugar) in his blood. As a result of his Type 2 diabetes, Muse was diagnosed with end stage renal disease (kidney failure) in May 2002, and began weekly dialysis treatments soon thereafter. In or around February 2011, Muse had a kidney replacement and no longer undergoes dialysis treatments.

10. Due to Muse's Type 2 diabetes, Muse has been substantially limited in the major life activity of insulin production, a function of the endocrine system since at least 1986. Due to kidney failure, Muse was substantially limited in the major life activity of expelling waste from his body from around May 2002, until at least February 2011.

11. Muse applied for the positions of either Protective Services Officer ("PSO") or Protective Services Supervisor ("PSS"), on or about August 16, 2009, after seeing the positions advertised in a newspaper. On or about August 18, 2009, Muse was interviewed for the PSO and PSS positions by Defendant's Associate Hospital Director for Support Services and its Director of Protective Services. During the interview, Muse was asked by Defendant's Associate Hospital Director of Support Services whether there were any times Muse could not be

scheduled for work. Muse replied that he was not available before noon on Mondays, Wednesdays, and Fridays, and that he would prefer evening shifts. Defendant's job application invited applicants to indicate their shift preferences.

12. In response to Muse's statement about his shift preference, Defendant asked Muse why he needed that schedule. Muse responded that he received dialysis treatments three mornings each week. Muse was not asked any further questions regarding his impairment or his desired schedule and the remainder of the interview concluded without any further discussion regarding his impairment. On August 20, 2009, Muse received notification from Defendant's Human Resources Department that he had not been selected for either the PSS or PSO positions.

13. The duties of a PSO are to provide security to students, faculty and visitors and to man designated security posts. The PSS position performs the regular security duties of the PSO but also supervises a group of PSOs. The PSO and PSS job requirements are virtually the same except the PSS position requires supervisory skills and five years of law enforcement experience, as opposed to three for the PSO position.

14. Muse has over 40 years of experience as a police officer with the Washington D.C. Metropolitan Police Department ("DCPD"), and as a private security guard. He also has approximately 15 years of supervisory experience. Muse was hired as a patrolman for DCPD, and retired as a homicide detective. As a homicide detective Muse supervised and trained newly promoted detectives. Muse also trained cadets on investigative techniques at the DCPD police academy and worked as head of campus security for a state university in Virginia for approximately two years. Muse also worked as a security guard at a medical laboratory for approximately five years. Accordingly, Muse was fully qualified to perform the essential functions of either the PSS or PSO positions.

15. Despite his qualifications, Muse was denied hire on or around August 20, 2009. Thereafter, Defendant continued to solicit applications for the PSO and PSS positions for at least eight months. During that time, Defendant hired seven people into the PSS position and 40 people into the PSO position. One or more of the persons selected into the PSS and/or PSO positions were less qualified than Muse.

16. Defendant unlawfully failed to hire Muse for the PSS or PSO positions because of his disability in violation of Section 102(a), (b)(1) and (b)(3) of Title I of the ADA, 42 U.S.C. § 12112(a), (b)(1) and(b)(3).

17. The effect of the practices complained of above has been to deprive Muse of equal employment opportunities because of his disability.

18. The unlawful employment practices complained of above were intentional.

19. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Muse.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices that discriminate on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Muse whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of the unlawful employment practices described above, including but not limited to instatement or front pay in lieu thereof.

D. Order Defendant to make Muse whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Muse whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Muse punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 19th day of July, 2012

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
131 M Street, NE
Washington, DC 20507

LYNETTE A. BARNES
Regional Attorney
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202

TRACY HUDSON SPICER
Supervisory Trial Attorney
Washington Field Office
131 M Street, N.E., Suite 4NW02F
Washington, DC 20507

s/Edward O. Loughlin
EDWARD O. LOUGHLIN
Virginia State Bar No. 70182
Trial Attorney
Washington Field Office
131 M Street, N.E., Suite 4NW02F
Washington, DC 20507